[701 NYS2d 84]

In the Matter of the Estate of DOROTHY SHUMAVON, Also Known as DOROTHY E. SHUMAVON, Deceased. MINDY J. TREPEL, Respondent; FRANK HART et al., Appellants, and MURIEL S. CLEGG et al., Respondents.

Second Department, December 13, 1999

APPEARANCES OF COUNSEL

*Kurzman & Eisenberg, L. L. P.,* White Plains (*Guy R. Fairstein* of counsel), for appellants.

*Gerard J. Sweeney,* Sunnyside (*John W. Steigler* of counsel), for respondent.

*Louis M. Laurino,* Garden City, guardian ad litem, respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

The decedent in this case was not survived by a spouse, or by issue, or by a parent, or by issue of a parent, or by grandparents. We agree with the Surrogate that, because the decedent was survived by first cousins, the first cousins once removed of the decedent are not distributees of the decedent's estate. We are led to this conclusion by the provisions of EPTL 4-1.1 (a) (6) which, unlike our dissenting colleague, we regard as clear and unambiguous.

The decedent, Dorothy Shumavon, died intestate on November 21, 1992. She was survived by three paternal first cousins, 20 paternal first cousins once removed, and others more remote. The Surrogate issued a decree that the decedent's three first cousins were her only distributees. The Surrogate confirmed a Special Referee's report finding that the appellants Frank Hart, John Hart, and David Hart, who are first cousins once removed with respect to the decedent, lack standing to file objections to the final account of the Public Administrator. We affirm.

EPTL 4-1.1 (a) (6) states the following: "[If a decedent is survived by:] [o]ne or more grandparents or the issue of grandparents (as hereinafter defined), and no spouse, issue, parent or issue of parents, one-half [of the estate shall be distributed] to the surviving paternal grandparent or grandparents, or if neither of them survives the decedent, to their issue, by representation, and the other one-half [of the estate shall be distributed] to the surviving maternal grandparent or grandparents, or if neither of them survives the decedent, to their issue, by representation; provided that if the decedent was not

survived by a grandparent or grandparents on one side or by the issue of such grandparents, the whole [of the estate shall be devised] to the surviving grandparent or grandparents on the other side, or if neither of them survives the decedent, to their issue, by representation, in the same manner as the one-half. *For the purposes of this subparagraph, issue of grandparents shall not include issue more remote than grandchildren of such grandparents*" (emphasis added).

The last sentence of this statute is clear. It defines the term "issue" so as to include children and grandchildren of the decedent's grandparents. It clearly excludes the great-grandchildren of the decedent's grandparents from the scope of the term "issue". The 20 first cousins once removed who survived the decedent, including the appellants, are all great-grandchildren of one or the other of the decedent's grandparents. They are expressly excluded from the definition of "issue" as that term is used in the statute, and hence there is nothing in this statute that confers upon them the right to share in the distribution of the decedent's estate. This is how the statute has been interpreted in the reported decisions (*see, e.g., Matter of Donohue,* 163 Misc 2d 537; *Matter of Briggs,* 167 Misc 2d 972).

Unlike our dissenting colleague, we see no conflict whatsoever between the final sentence of EPTL 4-1.1 (a) (6), on the one hand, and the directive contained in that statute that, when a given number of heirs are distributees, then their respective shares are to be determined "by representation." The final sentence of the statute clearly takes first cousins once removed outside the class of potential distributees. The use of the phrase "by representation" elsewhere in the statute simply means that where the potential distributees, as defined so as to exclude first cousins once removed, are members of different generations, then a particular method for calculating each distributees' share is to be used. It is possible to give effect to the last sentence of the statute without rendering meaningless any other portion of the statute, such as, for example, the statute's repeated reference to distribution "by representation." For example, if a decedent is survived by no one except one uncle, one first cousin, being the son or daughter of a predeceased uncle, and nine first cousins, all being children of a second predeceased uncle, then the statute would provide for the distribution of the estate as follows: one third to the uncle, and one fifteenth to each of the first cousins. The phrase "by representation" would be given effect to the extent that the 10

first cousins would share equally, rather than "per stirpes", that is, with the sole child of the first uncle taking a full one-third (see, EPTL 1-2.16).

As noted by the dissent, the "by representation" language is relevant when the "issue" of the decedent's grandparents, as defined in the statute, includes members of two generations. The "by representation" language is critical where, as in the illustration outlined above, the decedent is survived by an uncle, and by a number of first cousins who are the sons or daughters of a number of predeceased uncles. The "by representation" language can also become critical where the decedent is survived by a grandparent, and a number of first cousins who are descendants of a number of other predeceased uncles, aunts, or grandparents. To construe the last sentence of the statute in accordance with its plain terms does not, as the dissent implies, detract from the force of the "by representation" language used elsewhere in the statute.

Our dissenting colleague suggests that there is something wrong with the fact that, in this case, "the Surrogate's interpretation results in distribution per capita to the surviving members of a single generation." What the dissent seems to suggest is that the last sentence of the statute is not to be applied whenever to do so would result in the distribution of the decedent's estate to the members of one generation only. However, the fact that the statute uses the term "by representation" in order to define how to divide the estate between authorized disbributees who are members of two generations does not mean that, whenever the decedent is survived by members of two or more generations, they must all be considered to be authorized distributees. There is, in short, nothing wrong with the fact that the application of this statute in this case results in a distribution of the estate to first cousins only, for the simple reason that first cousins once removed are expressly excluded from the class of authorized distributees, and the decedent was survived by no closer relative.

The dissent also suggests that its reading of EPTL 4-1.1 (a) (6) is necessary in order to harmonize this subdivision with EPTL 4-1.1 (a) (7). This seems to us to be incorrect. EPTL 4-1.1 (a) (7) essentially states that first cousins once removed may become distributees when the decedent is not survived by first cousins, or by any closer relative. We see no conflict between a statute which authorizes first cousins once removed to become distributees when the decedent in fact had no closer relative, on the one hand, and a statute, such as the one under

review in this case, which plainly and unambiguously states that first cousins once removed are not to be considered as distributees when the decedent is survived by one or more first cousins, on the other hand.

There is no merit to the appellants' argument that reversal is warranted due to the Surrogate's failure to comply with SCPA 2225. In our view, the findings made were sufficient to satisfy the statute.

For these reasons, we conclude that the decree of the Surrogate should be affirmed.

ALTMAN, J. concurs in part and dissents in part and votes to modify the decree by, *inter alia,* adding the appellants and other first cousins once removed as distributees of the decedent's estate, with the following memorandum: While I agree that there is no merit to the appellants' contention that the Surrogate failed to make the findings required by SCPA 2225, I disagree with my colleagues' interpretation of EPTL 4-1.1 (a) (6).

As indicated in the majority opinion, the decedent, Dorothy Shumavon, died intestate on November 21, 1992. She and her husband, who predeceased her, had no children. Mrs. Shumavon was survived by three paternal first cousins (grandchildren of the decedent's grandparents) and a number of paternal first cousins once removed (great-grandchildren of the decedent's grandparents), including the objectants Frank, John, and David Hart, as well as more remote paternal relatives. There are no known surviving maternal relatives. The Surrogate's decree names only the three first cousins as distributees of the decedent's estate.

Intestate distribution is governed by EPTL 4-1.1. Because Mrs. Shumavon's closest surviving relatives are first cousins, the specific provision applicable to this case is EPTL 4-1.1 (a) (6), which states:

"If a decedent is survived by: * * *

"One or more grandparents or the issue of grandparents (as hereinafter defined), and no spouse, issue, parent or issue of parents, one-half to the surviving paternal grandparent or grandparents, or if neither of them survives the decedent, to their issue, by representation, and the other one-half to the surviving maternal grandparent or grandparents, or if neither of them survives the decedent, to their issue, by representation; provided that if the decedent was not survived by a grandparent or grandparents on one side or by the issue of

such grandparents, the whole to the surviving grandparent or grandparents on the other side, or if neither of them survives the decedent, to their issue, by representation, in the same manner as the one-half. For the purposes of this subparagraph, issue of grandparents shall not include issue more remote than grandchildren of such grandparents."

"Unless a contrary intention is indicated," issue are defined as "the descendants in any degree from a common ancestor" (EPTL 1-2.10 [a] [1]). EPTL 1-2.16 provides as follows:

"By representation means a disposition or distribution of property made in the following manner to persons who take as issue of a deceased ancestor:

"The property so passing is divided into as many equal shares as there are (i) surviving issue in the generation nearest to the deceased ancestor which contains one or more surviving issue and (ii) deceased issue in the same generation who left surviving issue, if any. Each surviving member in such nearest generation is allocated one share. The remaining shares, if any, are combined and then divided in the same manner among the surviving issue of the deceased issue as if the surviving issue who are allocated a share had predeceased the decedent, without issue."

The concept of distribution "by representation" was adopted as part of a series of amendments to the EPTL enacted in 1992 (*see,* L 1992, ch 595). When property is distributed by representation, a share is allocated to each surviving member of the closest generation to the decedent which has survivors. A share is also allocated to each deceased member of that generation who leaves issue surviving the decedent. The surviving members each receive their shares and the remaining shares of the deceased members are combined and then distributed in equal shares to the issue, the next generation (*see,* Turano, Practice Commentaries, McKinney's Cons Laws of NY, Book 17B, EPTL 4-1.1, at 601-602).

Mrs. Shumavon had a number of first cousins who predeceased her, in addition to her three surviving first cousins. The Harts are the children of those predeceased cousins. They contend that, pursuant to EPTL 4-1.1 (a) (6), they and the other first cousins once removed, children of other predeceased first cousins, are entitled to share in her estate as distributees by representation. However, the Surrogate concluded, and my colleagues in the majority agree, that the last sentence of EPTL 4-1.1 (a) (6) limits distribution to first cousins. I do not concur in that interpretation.

That sentence provides: "For the purposes of this subparagraph, issue of grandparents shall not include issue more remote than grandchildren of such grandparents" (EPTL 4-1.1 [a] [6]). While that provision modifies the general definition of "issue" set forth in EPTL 1-2.10 by restricting "issue" to descendants not more remote than grandchildren, i.e. first cousins, it does not limit distribution to first cousins. Rather, the statute specifically provides that the decedent's estate is to be distributed to the issue of grandparents, limited to those not more remote than first cousins, "by representation." Distribution "by representation" necessarily contemplates distribution to at least two generations (*see,* EPTL 1-2.16). Thus, in this case, Mrs. Shumavon's estate should be distributed to her grandparents' issue—her first cousins—by representation, which, by definition, means that the next generation, the Harts and the other first cousins once removed, are also distributees.

When construing a statute, "meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning" (McKinney's Cons Laws of NY, Book 1, Statutes § 231; *see, Cahen v Boyland,* 1 NY2d 8). The Surrogate's interpretation of paragraph (6), as adopted by my colleagues, fails to give meaning to the words "by representation" where, as here, the closest surviving relatives are first cousins on one side of the decedent's family. In effect, the Surrogate's interpretation results in distribution per capita to the surviving members of a single generation (*see,* EPTL 1-2.11), contrary to the specific directive of paragraph (6) that distribution be made by representation.

Notably, where the Legislature chose to provide for per capita distribution, it explicitly did so. For example, EPTL 4-1.1 (a) (7) provides for distribution per capita when the decedent's closest surviving relatives are the great-grandchildren of the decedent's grandparents (first cousins once removed). Both paragraphs (6) and (7) were added to EPTL 4-1.1 (a) by the 1992 amendments (*see,* L 1992, ch 595, § 8). Previously, EPTL 4-1.1 (a) (8) had provided for the distribution of property to the issue of grandparents "in the nearest degree of kinship to the decedent per capita." Distribution was thus limited to surviving relatives within the same degree of kinship. Paragraph (8) was eliminated by the 1992 amendments. By eliminating paragraph (8) and adding paragraphs (6) and (7), the Legislature changed the manner of distribution to the issue of grandparents. When the surviving relatives are first cousins or

those in a closer degree of kinship, paragraph (6) provides for distribution by representation, thus enlarging the pool of distributees to the next generation. In contrast, when the closest surviving relatives are first cousins once removed, paragraph (7) retains distribution per capita, thereby limiting distribution to a single generation. The Surrogate's interpretation of paragraph (6) ignores this distinction between the separate methods of distribution specifically provided by the Legislature.

The interpretation advanced by the Harts gives meaning to all the language and provisions of paragraph (6), including the final sentence (*see,* McKinney's Cons Laws of NY, Book 1, Statutes § 231, at 391). The final sentence acts, in part, as a triggering device to indicate the circumstances under which paragraph (6) applies. The restrictive definition of "issue" limits the applicability of paragraph (6) to cases where the decedent's closest surviving relatives are not more remote than first cousins, in contrast to paragraph (7) which applies when the closest surviving relatives are first cousins once removed. Both paragraphs (6) and (7) ensure that relatives more remote than first cousins once removed are not distributees, an apparent purpose of the elimination of former paragraph (8) which did not limit the potential distributees to any particular degree of kinship. Accordingly, I would modify the decree by adding the Harts and other first cousins once removed as distributees and remit the matter for consideration of the Harts' other objections, which were dismissed for lack of standing.

SULLIVAN and McGINITY, JJ., concur with BRACKEN, J. P.; ALTMAN, J., concurs in part and dissents in part in a separate opinion.

Ordered that the decree is affirmed, with costs payable by the appellants.