NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Board of Pharmacy
No. 2012-828


APPEAL OF NEW HAMPSHIRE RIGHT TO LIFE
(New Hampshire Board of Pharmacy)

Argued: January 16, 2014
Opinion Issued: May 22, 2014

Wadleigh, Starr & Peters, P.L.L.C., of Manchester (Michael J. Tierney on the brief and orally), for the petitioner.


Joseph A. Foster, attorney general (Lynmarie C. Cusack, assistant attorney general, on the brief and orally), for the State.


LYNN, J. The petitioner, New Hampshire Right to Life (NHRTL), appeals the New Hampshire Board of Pharmacy's decision that NHRTL did not have standing to participate in administrative actions involving the renewal of Planned Parenthood of Northern New England's (PPNNE) limited retail drug distributor license. We affirm.

NHRTL is a New Hampshire non-profit organization opposed to government support, by taxpayer subsidies, of medical clinics that provide abortion services. As such, the petitioner wants to ensure that all state agencies, including the Board of Pharmacy (Board), properly regulate these clinics in the state. PPNNE has operated in New Hampshire for a number of years as a licensed limited retail drug distributor pursuant to a contract with

the New Hampshire Department of Health and Human Services (DHHS). See RSA 318:42, VII (Supp. 2013); RSA 318:51-b (Supp. 2013). As a limited retail drug distributor, PPNNE must reapply annually to the Board to renew its licenses, the terms of which run from July 1 to June 30 of each year. See RSA 318:51-b; N.H. Admin. Rules, Ph. 601.06.

On April 17, 2012, NHRTL sent a written complaint to the Board, alleging that PPNNE did not have a state contract in place with DHHS and was therefore illegally dispensing prescription drugs at its clinics. In its letter, NHRTL claimed that PPNNE's contract with DHHS had expired on June 30, 2011, and had not been renewed. On June 18, 2012, PPNNE sent renewal applications for its six clinics to the Board, and on July 2, 2012, the Board sent letters to each clinic acknowledging receipt of the application. Each letter stated that the Board would not review the renewal application until August 15, 2012, but notified the clinics that it had "ministerially" renewed its licenses through September 1, 2012.

On August 7, 2012, NHRTL sent a second letter to the Board, opposing renewal of PPNNE's licenses for a variety of reasons. At the Board's monthly meeting on August 15, 2012, it voted to table consideration of PPNNE's license renewal applications until its September meeting, pending receipt of additional information from PPNNE. On September 17, 2012, NHRTL sent a third letter to the Board, restating its opposition to the renewal of PPNNE's licenses. Two days later, at its meeting on September 19, the Board approved PPNNE's applications to renew the licenses for its six clinics.

In response to the Board's approval of PPNNE's licenses, NHRTL filed a motion for a rehearing. In its motion, NHRTL asked the Board to reconsider the renewals of PPNNE's licenses, again restating the various reasons for its opposition to the renewals. On October 25, 2012, in a letter to NHRTL, the Board's executive secretary/director denied the request for a rehearing on the grounds that NHRTL "is neither a party nor an aggrieved person in the license renewal proceeding." The letter also stated that NHRTL could not intervene in the license renewal proceedings, as it had not complied with the applicable statutory provisions necessary to be granted intervenor status. On December 12, 2012, the Board ratified the position taken in the October 25 letter, stating that NHRTL lacked standing to appeal the licensing decisions. This appeal followed.

NHRTL argues that the Board erred in denying its motion for rehearing with respect to PPNNE's license renewals. It contends that the Board erred in finding that it did not have standing to challenge the renewals because RSA 318:29, I(b) (Supp. 2013) grants standing to intervene in licensing proceedings to "any person" who files a written complaint alleging misconduct by a licensee. We disagree.

2

In this case, "[t]he material facts are not in dispute; only their legal effect is in dispute." ACG Credit Co. v. Gill, 152 N.H. 260, 261 (2005). "The issue of standing is, therefore, a question of law, which we review de novo." Id. In order to address the petitioner's standing argument, we must engage in statutory interpretation. "In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole." Petition of Mooney, 160 N.H. 607, 609 (2010). "We interpret statutes not in isolation, but in the context of the overall statutory scheme." Id. "Our analysis must start with consideration of the plain meaning of the relevant statutes, construing them, where reasonably possible, to effectuate their underlying policies." Id. at 609-10. "Insofar as reasonably possible, we will construe the various statutory provisions harmoniously." Id. at 610. "Courts can neither ignore the plain language of the legislation nor add words which the lawmakers did not see fit to include." Id.

RSA 318:29, I(b) states: "The board may undertake disciplinary action against any licensee . . . [u]pon written complaint of any person which alleges that a licensee . . . has committed misconduct . . . ." Nothing in RSA 318:29, I(b) pertains to licensing requirements or license renewal.[1] Rather, it focuses upon when the Board may take disciplinary action, the type of misconduct sufficient to support disciplinary action, and appropriate actions the Board may take in response to licensee misconduct. An entirely separate statutory section deals with the licensing of limited retail drug distributors like PPNNE. See RSA 318:51-b. That section describes, among other things, the proof that an applicant must provide to the Board in order to be granted that type of license. See RSA 318:51-b, (II)(a)-(d); see also N.H. Admin. Rules, Ph 601.03 (listing requirements for application for licensure); 601.06 (renewal applications for limited retail drug distributors).

The only overlap between these two distinct statutory sections is in part IV of the limited retail drug distributor licensing section, which states: "Any person licensed pursuant to this section is subject to the provisions of RSA 318:29." RSA 318:51-b, IV. NHRTL's argument that the "any person" language applies not only to complaints regarding an incumbent licensee's misconduct, but also to challenges to an applicant's request for an initial or renewal license, is strained. Based upon its plain language, RSA 318:51-b, IV cannot be read as importing the phrase "upon written complaint of any person" from the disciplinary provision of RSA 318:29, I(b) into the licensing section. Rather, this provision means merely that those who become licensed are subject to

---

[1] In contrast to RSA 318:29, which deals with the Board's powers to take disciplinary action and provides that such action may be taken against "any licensee, permittee, registrant, or certificate holder," RSA 318:30 (Supp. 2013), which addresses the Board's investigatory powers, states that "[t]he [B]oard may investigate possible misconduct by licensees, permittees, registrants, certificate holders, applicants, and any other matters governed by the provisions of this chapter and RSA 318-B." (Emphasis added.)

3

disciplinary action, and thus can be the subject of "any person's" written complaint to the Board. NHRTL's argument to the contrary is untenable, as it would require that we interpret RSA 318:51-b, IV as if it stated: "Any person licensed <u>or seeking licensure</u> pursuant to this section is subject to the provisions of RSA 318:29." We are not at liberty to rewrite the statutory text in this fashion. <u>See</u> <u>Petition of Mooney</u>, 160 N.H. at 609-10.

However, even if we were to assume that NHRTL's interpretation of RSA 318:29, I(b) is correct, and that "any person" who submits a complaint to the Board <u>could</u> be eligible to intervene in either disciplinary <u>or</u> licensing proceedings, NHRTL's argument that such a construction leads to an automatic right to intervene in licensing proceedings is mistaken. Under the plain language of RSA 318:29, I(b) a complaint by "any person" does not necessarily lead to Board action. Instead, the provision states that the Board <u>may</u> undertake disciplinary action based upon such a complaint. RSA 318:29, I(b); <u>see</u> <u>City of Rochester v. Corpening</u>, 153 N.H. 571, 574 (2006) ("The general rule of statutory construction is that the word 'may' makes enforcement of a statute permissive . . . ."). Thus, the act of lodging a complaint does not deprive the Board of discretion to conclude that the complaint warrants no further action, nor does it give the complainant the right to challenge such a decision.[2]

Only when the Board determines that a complaint (and any resulting investigation) warrants an adjudicatory hearing does RSA chapter 318 grant the complainant a right to receive notice and "a reasonable opportunity to intervene." RSA 318:31, II (2005).[3] Consistent with this statute, the Board has issued a regulation stating that "[a] person filing a complaint <u>which becomes the subject of a disciplinary hearing</u> shall be served with the hearing notice and notified that he/she may petition to intervene in the proceeding." <u>N.H. Admin. Rules</u>, Ph 204.07 (emphasis added). These provisions clearly show that the

---

[2] The only circumstance under which the statute appears to limit the Board's discretion to dispose of complaints that do not progress to an adjudicatory hearing, over the objection of the complainant, is where the Board's investigation of the complaint results in an offer of settlement by the licensee. Even in such situations, RSA 318:30, VII (Supp. 2013) allows the Board to settle the matter without the consent of the complainant, "provided the material facts are not in dispute and the complainant is given an opportunity to comment upon the terms of the proposed settlement."

[3] NHRTL's argument here – which confuses the concepts of standing to make a complaint with that of standing to participate in administrative proceedings or to appeal administrative decision-making – is analogous to that of the appellant in <u>Ruel v. N.H. Real Estate Appraiser Bd.</u>, 163 N.H. 34 (2011). In <u>Ruel</u>, we rejected the appellant's argument that the appraiser who filed a complaint that led to the Real Estate Appraiser Board's action lacked "standing" to do so because he would not qualify as a person "directly affected" for purposes of having standing to appeal the Board's decision. <u>See id</u>. at 40-41. Similarly, here the mere fact that NHRTL may have "standing" to file a complaint with the Board of Pharmacy does not mean that it enjoys a right to participate in the Board's licensing or disciplinary proceedings, or to appeal its decisions.

4

mere filing of a written complaint does not, as NHRTL urges, grant it a right to intervene in the investigatory or licensing processes of the Board.

Also unavailing is NHRTL's argument that under the Administrative Procedure Act (APA), RSA chapter 541-A (2007 & Supp. 2013), filing a complaint automatically grants it intervenor status. Even if we assume that the intervention section of the APA could be interpreted to allow a third party to intervene in licensing proceedings, it states that "the presiding officer shall grant one or more petitions for intervention" if certain requirements are met. RSA 541-A:32, I (2007). This statute does not grant a person intervenor status merely because he or she files a complaint or letter expressing concerns as to some action or decision an administrative agency has under consideration. Rather, a person seeking intervention must petition to intervene. Specifically, the APA requires a person seeking intervenor status to submit a petition that specifically asserts that its rights and interests may be affected by the proceeding. RSA 541-A:32, I(b). Here, NHRTL did not seek to intervene in the licensing proceeding, as it did nothing more than write letters opposing renewal by the Board of PPNNE's licenses. Thus, it did not attain the status of an intervenor.

Finally, we also reject NHRTL's argument that it had standing under RSA 541:3 (2007) to seek rehearing of the Board's renewal of PPNNE's licenses. The Board found that NHRTL lacked standing to seek rehearing, as it was "neither a party nor an aggrieved person in the license renewal proceeding." We agree with the Board.

RSA 541:3 states that "[w]ithin 30 days after any order or decision has been made by the [Board], any party to the action or proceeding before the [Board], or any person directly affected thereby, may apply for a rehearing in respect to any matter determined in the action or proceeding." RSA 541:3; see RSA 318:31, VI (2005). The filing of such a motion is a prerequisite to seeking judicial review of the Board's decision. See RSA 541:4 (2007). To establish standing under section 541:3, NHRTL must show that it "has suffered or will suffer an injury in fact." Appeal of Stonyfield Farm, 159 N.H. 227, 231 (2009); see also Appeal of Richards, 134 N.H. 148, 154 (1991). To show an injury in fact, the alleged harm cannot be speculative. See Hannaford Bros. v. Town of Bedford, 164 N.H. 764, 769 (2013) (stating that the alleged injury was, at most, speculative and did not give rise to a definite interest in the outcome of an appeal). Nor can the injury be a mere potential harm. See Stonyfield Farm, 159 N.H. at 231-32 (stating that potential or future harm is insufficient, as a matter of law, to convey standing upon the petitioners to appeal the Public Utility Commission's decision). Another way of formulating the "injury in fact" requirement is that "[n]o individual or group of individuals has standing to appeal when the alleged injury caused by an administrative agency's action affects the public in general." Richards, 134 N.H. at 156. "Similarly, an

association has no standing to challenge an administrative agency's action based upon a mere interest in a problem." Id. (quotation omitted).

In appealing the Board's denial of its motion for a rehearing, NHRTL does not allege a specific injury in fact. Instead, it asserts a generalized interest in helping the public by ensuring that the Board properly regulate clinics that provide abortion services. NHRTL states that it is "concerned" that the Board has continued to license PPNNE, that the Board is not inspecting PPNNE's six clinics, and that untrained staff members at the clinics are dispensing medication. NHRTL also claims that failure to regulate such clinics "has recently been cited as the cause of deaths in several states." None of these generalized claims alleges that NHRTL has suffered an injury in fact, or that its own rights have been, or will be, specifically or directly affected. NHRTL does not claim that any of its individual members has suffered, or will suffer, harm — it refers to deaths caused by the alleged failure to regulate that did not affect NHRTL's membership. Instead, these concerns merely represent NHRTL's interest in what it believes to be a public problem. Accordingly, the Board did not err in concluding that NHRTL lacked standing under RSA 541:3.[4]

Affirmed.

CONBOY and BASSETT, JJ., concurred.

---

[4] NHRTL also argues that it should be granted standing before the Board so that it need not be "required to bring a Declaratory Judgment action before the Superior Court" pursuant to RSA 491:22 (Supp. 2013). We decline to opine as to whether NHRTL may have an alternative avenue to obtain the relief it seeks since, even if true, that does not affect our decision herein.